**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LETTUCE ENTERTAIN YOU ENTERPRISES, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 09 C 2582 |
| LEILA SOPHIA AR, LLC d/b/a LETTUCE MIX, and SHAHRAM TEHRANI | ) ) ) | Judge Joan H. Lefkow |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Lettuce Entertain You Enterprises, Inc. ("LEYE"), is the owner of a family of LETTUCE marks for restaurant and catering services. On April 28, 2009 LEYE filed a complaint for trademark infringement seeking an order directing the defendants, Leila Sophia AR, LLC, and Shahram Tehrani (collectively, "Tehrani"), to remove a "Lettuce mix" sign Tehrani has erected above the entry of a restaurant he intends to open in the Lincoln Park neighborhood of Chicago. In an effort to reach a stand still agreement, Tehrani covered the "Lettuce mix" sign with a banner that reads prominently, "Let us be!" with the words "Name pending . . ." below and in a smaller font. An image of a head of lettuce is depicted on either side of the text. LEYE contends the temporary banner does not avoid infringement and seeks an order for its immediate removal and replacement with a non-infringing sign. The parties have simultaneously submitted briefs on the issue of whether the temporary sign infringes under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). For the following reasons, LEYE's oral motion for a temporary restraining order is denied.

**FACTS**

The following facts appear substantially undisputed: LEYE is a restaurant and catering corporation based in Chicago that owns more than seventy restaurants nationwide. LEYE owns and operates several well-known restaurants in Chicago, including Big Bowl, Café Ba-Ba-Reeba!, Everest, L20, Mon Ami Gabi, R.J. Grunts, Scoozi!, Shaw's Crab House and Wildfire.[1] LEYE owns a family of federally registered marks for restaurant and catering businesses utilizing the word "lettuce," including LETTUCE ENTERTAIN YOU ENTERPRISES (registered May 21, 1978 for restaurant services), LETTUCE ENTERTAIN YOU (registered June 16, 1990 for restaurant services), LETTUCE (registered January 14, 1992 for restaurant services), LETTUCE PARTIES (registered March 3, 1993 for restaurant services) and LETTUCE PLANET (registered September 2, 2008 for restaurant services, catering and special event planning). LEYE has continuously and extensively used its LETTUCE family of marks in connection with LEYE's restaurant, event planning and consulting services. Steibler Decl. ¶10, Ex. A to Pl.'s Mem [Dkt. No. 16]. For example, LEYE operates a unified telephone reservation number for restaurants at 1-888-LETTUCE and a frequent diner club program using the telephone number 1-773-LETTUCE, sells gift cards bearing the LETTUCE ENTERTAIN YOU® mark, and maintains websites at the domains www.lettuceentertainyou.com, www.leye.com, www.lettuceconsulting.com and www.lettuceprivatedining.com. *Id*. at ¶ 7. LEYE's website uses the LETTUCE mark as a pun for "let us" and as a shorthand for the corporation itself. For example, at www.leye.com, the heading on the About Us page is "Lettuce Tell You . . ." and "Lettuce Suggest a Restaurant" on the Restaurant Search page, while the Gift

---

[1] None of LEYE's restaurants uses the word "Lettuce" in its name nor does any operate solely as a salad bar establishment. At the May 21, 2009 hearing, however, LEYE's counsel indicated that R.J. Grunts, one of LEYE's first restaurants, is famous for its salad bar.

Card page is entitled "Lettuce Gift Cards" and the news page is entitled "Lettuce in the News." The LETTUCE ENTERTAIN YOU mark appears on the upper left corner of each page in white font. Above the mark is a logo of a waiter in a white jacket opening a serving dish with stars wafting out. The serving waiter logo, or simply two wavy lines of stars similar to those wafting out of the serving dish, appear on other advertising and marketing materials, including emails and flyers.

Tehrani is the owner of Basil Leaf Café and Sage Food & Wine, restaurants also located in the Lincoln Park neighborhood of Chicago. Tehrani formed Leila Sophia AR, LLC in late 2008 to open a salad bar at 2470 N. Clark, near his other restaurants, under the name "Lettuce mix." Tehrani erected a "Lettuce mix" sign at that location. The word "Lettuce" is prominently featured in a distinctive green font, with a capital "L" and an orange "u." The word "mix" is in all lower case and is in a smaller, less distinctive font set off to the right of "Lettuce" in a white box.

LEYE learned that Tehrani intended to open a restaurant under the name "Lettuce mix" on March 22, 2009 when one of its employees noticed a temporary sign in the window at 2470 North Clark. On March 24, 2009, LEYE sent a cease and desist letter to Tehrani stating its belief that his use of such a name was in bad faith and constituted trademark infringement. Tehrani's attorney responded on March 25, 2009 stating that Tehrani would not stop using the name "Lettuce mix." The response indicated that Tehrani believes the word "lettuce" is not eligible for trademark protection and, furthermore, that there is no likelihood of confusion because (1) LEYE operates no restaurants having a similar name or concept, (2) the "Lettuce mix" sign is in a different color and font from LEYE's marks, and (3) Tehrani has a pattern of

3

establishing unique restaurant ideas in the area where his new restaurant was to be located.[2] The penultimate paragraph of the letter states

> Your letter further alleges that my client is attempting to take advantage of your client's goodwill by using the name "Lettuce Mix." My client has been operating neighborhood restaurants in Lincoln Park within a block of each other for over a decade. He has established his own reputation as a fine dining, high quality neighborhood restaurant and certainly doesn't need the goodwill of a commercialized entity.

Attachment 2 to Lenz Decl., Ex. B. to Pl.'s Mem. On April 2, 2009, LEYE sent another letter to Tehrani's attorney stating that it views his position as untenable and outlining what it believes to be the relevant legal authority. On April 20, 2009, in response to questions from LEYE's counsel, Tehrani's attorney indicated that he was not authorized to accept service on Tehrani's behalf and stated that his client was "at least two months from opening" the restaurant. Tehrani's Affidavit, attached to his memorandum, indicates that "it remains unknown when the restaurant concept will be open for business as it remains in the process of securing local and city permits to operate a food service establishment within the City of Chicago." Tehrani Aff. ¶ 5. As of the date of the parties' latest submissions, the restaurant at 2470 N. Clark has not yet opened.

LEYE's complaint asserts claims for infringement and false designation of origin under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.* (Counts I and II), violations of the Illinois Deceptive Trade Practices Act (Count III), common law service mark infringement (Count IV), and unfair competition (Count V). As stated, however, this decision addresses only the temporary banner and whether it infringes under federal trademark law. LEYE contends that Tehrani must replace the "Let us be!" banner with a sign that does not depict images of lettuce or use the term "lettuce" or its phonetic equivalent, or any term confusingly similar until the court rules on its

---

[2] The court expresses no opinion as to the validity of Tehrani's views.

pending preliminary injunction motion. The lawsuit has received some press and the following comment has been attributed to Tehrani:

> They were saying they didn't want me to use the name lettuce. It's like owning the sun. What am I going to do pay them $2 every time I get a suntan? It's absurd.

Lisa Donovan, <u>Restaurant Owner Sued By Lettuce Entertain You Over Name</u>, Chicago Sun Times, May 21, 2001, http://www.suntimes.com/business/1584952,CST-NWS-foodfight21_.article.

## ANALYSIS

I.  **Standard for Interlocutory Relief**

"An equitable, interlocutory form of relief, a 'preliminary injunction is an exercise of a very far-reaching bar, never to be indulged in except in a case clearly demanding it.'" *Girl Scouts of Manitou Council, Inc.* v. *Girl Scouts of the United States of America, Inc.*, 549 F.3d 1079, 1085 (7th Cir. 2008) (citing *Roland Mach. Co.* v. *Dresser Indus., Inc.*, 749 F.2d 380, 389 (7th Cir. 1984)). A party seeking a preliminary injunction or a temporary restraining order must demonstrate (1) its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) it will suffer irreparable harm if the injunction is not granted. *Id.*; *Recycled Paper Greetings, Inc.* v. *Davis*, 533 F. Supp. 2d 798, 803 (N.D. Ill. 2008) (internal citations omitted). If the court determines that the moving party has failed to demonstrate any one of these three threshold requirements, it must deny the injunction. *Id.*

II. **Likelihood of Success On the Merits**

The pending motion can be resolved on the single issue of likelihood of success on the merits.

### A. LEYE's Claim

The Lanham Act provides in relevant part that a plaintiff may bring a civil action against

> [a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin . . . which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

15 U.S.C. § 1125(a). Where trademark infringement and false designation of origin are alleged, "the movant shows a likelihood of success by establishing that (1) he has a protectable mark, and (2) that a 'likelihood of confusion'[3] exists between the marks or products of the parties. *Id.* LEYE contends that its ownership of the LETTUCE family of marks entitles it to protection from Tehrani's use of the temporary banner.

### B. Tehrani's defense.

For purposes of the motion, Tehrani does not dispute that LEYE's marks are protectable. Nor does he undertake an extensive likelihood of confusion analysis. He argues principally that (a) his banner is not a use in commerce and thus not within the ambit of the Lanham Act and (b) the "fair use" defense applies.[4] Because the court is persuaded by the second argument, it will not address the first at this time. This means that the court must assume that Tehrani's banner is a use in commerce of LEYE's marks but the defense exonerates him from liability for

---

[3] In the Seventh Circuit, the following seven factors are used to evaluate whether a likelihood of confusion exists in trademark and service mark cases (1) similarity between the marks in appearance and suggestion; (2) similarity of the products or services; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and (7) intent of defendant to "palm off his product as that of another. *Id.*

[4] Tehrani also argues that the "Let us be!" banner is not trademark infringement because (1) it is free speech (specifically a means of communication, opinion and peaceful protest) protected by the First Amendment and (2) "let us" is a generic phrase not entitled to trademark protection.

it. *See Bobbitt* v. *Victorian House, Inc.*, 532 F. Supp. 734, 736 (N.D. Ill. 1982) (citing 5 Wright and Miller, FEDERAL PRACTICE AND PROCEDURE 2D § 1270 at 292) (A proper affirmative defense is one which "generally admits the matters in a complaint but suggests some other reason why there is no right of recovery.")

> The Lanham Act provides a defense to an otherwise incontestable mark where, *inter alia*,
>
> > . . . the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, . . . of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin ....

15 U.S.C. § 1115(b)(4). To prevail on the fair use defense, Tehrani must show that (1) he is not using the content of the banner as a service mark; (2) he is using the phrase in good faith merely to describe his services, and (3) the phrase is in fact descriptive of his services. *M.B.H. Enterprises, Inc.* v. *WOKY, Inc.*, 633 F.2d 50, 53 (7th Cir. 1980); *Packman* v. *Chicago Tribune Co.*, 267 F.3d 628, 639 (7th Cir. 2001).

### 1. Tehrani is not using LEYE's mark as a service mark.

"A service mark is a symbol or combination of symbols used by a source of services to identify itself to the public as the source of its services and to create in the public consciousness an awareness of the uniqueness of the source of its services." *WOKY*, 633 F.2d at 53-54. Whether "Let us be!" and images of lettuce heads is being used as a service mark "depend[s] on whether [the defendant] intends to use [the words] as a service mark and whether they in fact [perform] the function of a service mark." *Id*. at 53.

Plainly, Tehrani is not using his banner as a service mark. The combination of "Let us be" and the images does not identify Tehrani as the source of services or the uniqueness of a restaurant. Rather, Tehrani is using the banner to inform the observer that LEYE is trying to

7

stop him from using any form of "lettuce" to name his establishment. LEYE does not argue to the contrary.[5] Nevertheless, LEYE contends that Tehrani intends to profit indirectly from drawing attention to the lawsuit by drumming up the public's interest and excitement over the opening of his restaurant. Even if true, this does not mean that he is using "Let us be!" as a service mark.

*WOKY* is instructive here. In that case, the Seventh Circuit reasoned that it does not necessarily follow from the defendant's intent to commercially profit from the use of a plaintiff's mark that the defendant is using the mark as a service mark. *Id.* at 54. In *WOKY*, the Seventh Circuit found that the defendant, a radio station that broadcasted plaintiff's "I LOVE YOU" mark over the radio did intend to derive a commercial advantage from its use of the mark. Nevertheless, because the radio station used its call letters and frequency to identify itself when broadcasting the mark, and "I LOVE YOU" was used "to describe to the public what it felt to be real and valuable qualities of its radio service," *id.*, the court ruled that WOKY did not use the phrase as a service mark. *Id.* at 55.

Similarly here, although Tehrani may hope to benefit from its use of LEYE's marks, he is not using them as service marks but as something quite different. Tehrani's service mark, so far, is "Lettuce mix." Indeed, the parties agree that Tehrani is using "Let us be!" and the images to

---

[5] LEYE states,

> [T]he play of the words 'let us be' covering the infringing sign LETTUCE MIX is an intentional effort to draw attention to this controversy, and, therefore to invoke the LETTUCE family of marks. Potential customers seeing the LET US and Lettuce Design Sign, particularly neighborhood residents who previously viewed the LETTUCE MIX sign, will inevitably stop in to learn the story of the dispute . . . . The temporary sign is thus revealed as another effort by defendants to trade unlawfully upon the LETTUCE family of marks.

Pl.'s Supp. Mem. at 2-3.

draw attention to this lawsuit and, as evidenced by his comment in the CHICAGO SUN TIMES, to what he views as LEYE's unjust efforts to enforce of the LETTUCE marks. By "Let us be!" Tehrani means, "Hey, Lettuce Entertain You, leave us alone!" Furthermore, by parodying LEYE's regular use of LETTUCE as a pun for "let us," Tehrani also expresses his opinion that LEYE's enforcement of its mark is an unjustified attempt to appropriate a generic term. As a restaurant proprietor and member of the community, Tehrani may use "Let us be!" and the lettuce images so long as they are not used to identify the source of his services. *Cf. Nike, Inc.* v. *"Just Did It" Enter.*, 6 F.3d 1225, 1231-32 (7th Cir. 1993) (an intent by the defendant in a trademark case to parody raises the inference that the user does not intend to cause confusion regarding the source of goods); *Jordache Enterprises, Inc.* v. *Hogg Wyld, Ltd.*, 625 F. Supp. 48, 55-56 (D.N.M. 1985) (trademark infringement does not exist where a junior user of a mark intentionally undertakes to capitalize upon public awareness of a product or an idea created by the advertising of a senior user where the junior user intends to parody the senior user, not to cause confusion).

### 2. Descriptiveness

The other elements of the fair use defense inquire into whether the use of plaintiff's mark is a good faith effort to describe the defendant's services and whether it is in fact descriptive. Tehrani's good faith can be judged only by inquiry into his subjective purposes in using the phrase "Let us be!" *WOKY*, 633 F.2d at 54. As already stated, the parties here agree on Tehrani's subjective purpose in putting up the "Let us be!" banner. It is not to describe his restaurant but to express protest of LEYE's aggressive action against Tehrani's intended use of the word "Lettuce" as a service mark.

Apart from Tehrani's subjective intent, the combination of the images and the text on the banner must be descriptive of restaurant services. "Descriptive terms 'impart information directly.'" *Packman* v. *Chicago Tribune Co.*, 267 F.3d 628, 641 (7th Cir. 2001). *See, e.g., RDK Corp*. v. *Larsen Bakery, Inc*., 2006 WL 2168797, 20 (E.D.Wis.) (citing *TCPIP Holding Co.,* 244 F.3d at 93; *Mil-Mar Shoe Co.,* 75 F.3d at 1157 & n.21 ("A trademark that particularizes its product or service, by identifying the ingredients, qualities, or characteristics of the product or service, is 'descriptive'"; a descriptive mark is "trademarkable" only if it has acquired secondary meaning).

Since this analysis must assume that Tehrani's banner uses LEYE's marks, the task is to identify the message conveyed through use of the marks and then determine whether the use conveys a meaningful message other than that claimed by the plaintiff. If so, it is descriptive for purposes of the fair use defense. In other words, a plaintiff cannot appropriate a commonly used phrase and thereby prevent others from using the phrase in a descriptive sense. *Id*. – ????

For example, in *Packman*, the plaintiff had secured a registration in THE JOY OF SIX in connection with football and basketball games. *Id*. at 633. THE CHICAGO TRIBUNE began using "the joy of six" in anticipation and celebration of the Chicago Bulls' sixth NBA championship. After the Bulls won the championship, THE TRIBUNE reproduced its front page, the headline of which read "the joy of six" on t-shirts, posters, plaques and other memorabilia. *Id*. at 634. THE TRIBUNE argued that it had made fair use of the mark. In affirming the district court's grant of summary judgment, the Seventh Circuit found the newspaper's use of the mark descriptive because it "used 'the joy of six' as a headline to describe a newsworthy event and the happiness associated with the Bulls' sixth NBA championship." *Id*. at 641. Similarly, in *WOKY*, the radio station used I LOVE YOU MILWAUKEE to show that it "liked Milwaukee . . . . that Milwaukee

was a good place to live, a community composed of persons who enjoy, in general and in the abstract, the affection and respect of those who provide the radio service denominated WOKY." *WOKY*, 633 F.2d at 55. In both cases, the court concluded that where the use of the plaintiff's mark conveyed a message unrelated to the defendant's product or service, it met the descriptive prong of the fair use defense.

Assuming the phrase "Let us" surrounded by the images of lettuce evokes in the mind of the viewer the LETTUCE family of marks, the word which immediately follows – "be" – turns the phrase into an imperative one. The banner thus conveys a message from its authors, the proprietors of the unopened restaurant, to the owners of the LETTUCE marks, essentially saying, "Leave us alone!" Even if potential customers viewing the banner do not know or learn of the dispute, it is clear at first glance that the banner is being used to communicate a message of protest.

Because Tehrani is not using the banner as a service mark, because Tehrani's intention in hanging the banner was to convey a message of protest against LEYE rather than to pass his new restaurant off as a LEYE restaurant, and because the banner is descriptive, the court is persuaded that the banner is fair use of LEYE's marks. As such, LEYE cannot succeed on the merits of its position that the temporary sign must be enjoined. This, of course, does not address the question presented by the complaint that the "Lettuce mix" sign infringes.

## CONCLUSION

For the foregoing reasons, LEYE's oral motion for a temporary restraining order is denied.

Dated: June 8, 2009          Enter: _____
                                    JOAN HUMPHREY LEFKOW
                                    United States District Judge