**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LETTUCE ENTERTAIN YOU ENTERPRISES, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| LEILA SOPHIA AR, LLC, d/b/a LETTUCE MIX and SHAHRAM TEHRANI, | ) ) ) ) |
| Defendants. | ) |

No. 09 CV 2582

Hon. Joan H. Lefkow

**OPINION AND ORDER**

Lettuce Entertain You, Enterprises, Inc. ("LEYE"), is the owner of a family of marks using the word "lettuce" in connection with restaurant services. On April 28, 2009, LEYE filed a complaint alleging trademark infringement seeking an order directing the defendants, Leila Sophia AR, LLC, and Sharam Tehrani (collectively, "defendants"), to remove a "Lettuce mix" sign installed above the entrance to a new restaurant they have since opened in the Lincoln Park neighborhood of Chicago.[1] LEYE has moved for a preliminary injunction against the defendants prohibiting them from operating under the name "Lettuce mix." For the following reasons, LEYE's motion for a preliminary injunction [#14] is granted.

**FACTS**[2]

---

[1] At the time this suit was filed, the new restaurant was not yet opened. After defendants were served, they covered the sign with a banner reading "Let us be!" followed by the words "Name pending . . ." below in a smaller font. The court previously ruled that, assuming the banner used LEYE's LETTUCE mark, any such use was fair. *See Lettuce Entertain You Enterprises, Inc.* v. *Leila Sophia AR, LLC*, 638 F. Supp. 2d 895 (N.D. Ill. 2009).

[2] The court assumes general familiarity with the facts of this case, which are set out in detail in the court's June 8, 2009 Opinion and Order. (Dkt No. 29.) Only the facts relevant to the current motion will be

LEYE is a restaurant and catering corporation based in Chicago that owns more than seventy restaurants nationwide. Several of these restaurants are located in Chicago, including Big Bowl, Café Ba-Ba Reeba!, Everest, L20, Mon Ami Gabi, R.J. Grunts, Scoozi!, Shaw's Crabhouse, and Wildfire. While none of LEYE's restaurants uses the word "lettuce" or operates solely as a salad bar establishment, the parties do not dispute that R.J. Grunts is famous for its salad bar.

LEYE owns a family of federally registered marks for restaurant services utilizing the word "lettuce," including LETTUCE ENTERTAIN YOU ENTERPRISES (registered May 21, 1990 for restaurant services), LETTUCE (registered January 14, 1992 for restaurant services), LETTUCE PARTIES (registered March 3, 1993 for restaurant services) and LETTUCE PLANET (registered September 2, 2008 for restaurant services, catering and special event planning). LEYE has also continuously and extensively used its LETTUCE family marks in connection with LEYE's restaurants, event planning and consulting services, and in cross-promotional activities. Steibler Decl. ¶ 10, attached as Ex. A to Pl.'s Mem (Dkt. No. 16.) LEYE operates a unified telephone reservation number for its restaurants at 1-888-LETTUCE and a frequent diner club using the telephone number 1-773-LETTUCE. It also sells gift cards bearing the LETTUCE ENTERTAIN YOU® mark, and maintains various websites using the LETTUCE mark. *Id.* at ¶17. LEYE repeatedly uses the LETTUCE mark as a pun for "let us" and as shorthand for the corporation itself. The LETTUCE ENTERTAIN YOU® mark appears on LEYE's website, LEYE's frequent diner card information packets, and other customer mailings

---

discussed. All facts contained in this section are taken from the courts previous opinion and the parties' briefs.

and promotional materials.  It also often appears below a logo of a waiter in a white jacket opening a serving dish with stars wafting out.

Tehrani formed Leila Sophia AR, LLC in late 2008 to open a restaurant named "Lettuce mix" at 2470 N. Clark St.  Defendants' new restaurant is located less than a block from Tehrani's existing restaurants, Basil Leaf Café and Sage Food & Wine.  LEYE's R.J. Grunts restaurant is located less than half a mile away.  In the "Lettuce mix" sign at the new restaurant, the word "Lettuce" is predominately featured in a distinctive green font with a capital "L" and an orange "u."  The word "mix" is in all lower case and is in a smaller, less distinctive font set off to the right of "Lettuce" in a white box.  On March 22, 2009, a LEYE employee noticed the "Lettuce mix" sign.  Two days later, on March 24, 2009, LEYE sent defendants a cease and desist letter indicating its belief that their use of "Lettuce mix" was in bad faith and constituted trademark infringement.  Additionally, LEYE requested that Tehrani remove the sign and cease to operate under the name "Lettuce mix."  Tehrani refused and, through counsel, responded with a letter containing what he believed to be the relevant law defending his use of the word "lettuce."  On April 20, 2009, Tehrani's attorney informed LEYE that the name of the new restaurant would not be changed.

In April 2009, LEYE filed a complaint alleging federal service mark and common law infringement (Counts I & IV), false designation of origin (Count II), violations of the Illinois Deceptive Trade Practices Act (Count III), and unfair competition (Claim V).  After the filing of the complaint and to resolve LEYE's motion for a temporary restraining order, defendants covered the "Lettuce mix" sign above the entrance to its then unopened restaurant with a banner that read "Let us Be" with the phrase "Name pending . . ." below and in a smaller font.  Heads of

3

lettuce were depicted on both sides of the text. The defendants' restaurant opened under the name "Name pending…" The restaurant serves soups, sandwiches, and salads. Ex. B to Pl.'s Reply Mem. (Dkt. No. 37). LEYE requests this court issue a preliminary injunction enjoining defendants from using the "Lettuce mix" name or any of the LETTUCE family of marks until final disposition of the case.

## LEGAL STANDARD

A preliminary injunction is "an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Girl Scouts of Manitou Council, Inc.* v. *Girl Scouts of the United States of Am., Inc.*, 549 F.3d 1079, 1085 (7th Cir. 2008) (citations omitted) (quotation marks omitted). A party seeking a preliminary injunction must demonstrate that (1) its case has some likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) it will suffer irreparable harm if the injunction is not granted. *Id.* To succeed on its motion for a preliminary injunction, LEYE must show that it has a "better than negligible" chance of success on the merits. *Id.* at 1096 (citing *Ty Inc.* v. *Jones Group, Inc.,* 237 F.3d 891, 897 (7th Cir. 2001)). After the moving party satisfies these three elements, "the court must then consider any irreparable harm an injunction would cause the nonmoving party . . . . Finally the court must consider any consequences to the public from denying or granting the injunction." *Promatek Indus., Ltd.* v. *Equitrac Corp.*, 300 F.3d 808, 811 (7th Cir. 2002) (citing *Ty,* 237 F.3d at 895). These considerations are weighed according to a "sliding scale approach" where "the more likely the plaintiff's chance of success on the merits, the less the balance of harms need weigh in its favor" and vice-versa. *Id.*

At the outset, defendants cite *Tom Doherty Assocs., Inc.* v. *Saban Entm't, Inc.*, arguing that a heightened standard applies in this case because a preliminary injunction would render the trial moot. 60 F.3d 27, 35 (2d Cir. 1995). A trial is rendered moot when "the effect of the order, once complied with, cannot be undone." *Id.* Injunctions preventing the filming of a live television event or the disclosure of trade secrets, for example, cannot be undone. *Id.* Defendant's reliance on *Tom Doherty* is unavailing in the instant case, however, because preventing the defendants from further using "Lettuce mix" can be undone by simply allowing them to operate their new restaurant under that name.[3]

## ANALYSIS

### I. Likelihood of Success on the Merits

The Lanham Act provides in relevant part that a plaintiff may bring a civil action against

> [a]ny person who, on or in connection with any goods or services, or any
> container for goods, uses in commerce any word, term, name, symbol, or device,
> or any combination thereof, or any false designation of origin . . . which is likely
> to cause confusion, or to cause mistake, or to deceive as to the affiliation,
> connection, or association of such person with another person, or as to the origin,
> sponsorship, or approval of his or her goods, services, or commercial activity by
> another person.

15 U.S.C. § 1125(a). In order to succeed on its infringement claim, LEYE must establish (a) that the LETTUCE family of marks is protectable, (b) that defendants used the mark in commerce, and (c) that their use of the term is likely to cause confusion. *See Ty,* 237 F.3d at 897.

### A. Whether LEYE's Family of Marks is a Protectable Service Mark

---

[3] Consistent with Seventh Circuit precedent, the court will further consider the effects of the injunction in the balancing phase of the analysis, after its discussion of LEYE's likelihood of success on the merits.

Defendants argue that LEYE uses the term "lettuce" to refer to the green leafy vegetable and is therefore generic and not subject to protection under the Lanham Act. A generic term is one that "serve[s] to denominate a type, a kind, a genus or a subcategory of goods." *Henri's Food Products Co., Inc.* v. *Tasty Snacks, Inc.*, 817 F.2d 1303, 1305-06 (7th Cir. 1987). In other words, a generic mark merely specifies the type or genus of the goods or services being sold. *Id.* Thus, the relevant inquiry is (1) what genus of services is at issue; and (2) whether the relevant public uses that term primarily to refer to that genus of services. *See Dial-A-Mattress Operating Corp.*, 240 F.3d at 1344. Even though several of LEYE's marks are incontestable under 15 U.S.C. § 1065,[4] an incontestable mark may be cancelled at any time if it has become generic. 15 U.S.C. § 1064(3); *Park 'N Fly, Inc.* v. *Dollar Park and Fly, Inc.*, 469 U.S. 189, 195, 105 S. Ct. 658 (1985). Because an incontestable mark is presumed nongeneric, the burden lies on the challenger to prove genericness. *See TE-TA-MA Truth Foundation-Family of URI, Inc.* v. *World Church of the Creator,* 297 F.3d 662, 665 (7th Cir. 2002); *Liquid Controls Corp.*, 802 F.2d at 936.

In this case, LEYE's LETTUCE marks are registered for "restaurant services," including a catering business, restaurant management, and an event planning business. Although both LEYE's restaurants and catering companies and defendants' new restaurant sell dishes in which lettuce is an ingredient, the genus of their services is not selling lettuce but providing restaurant services. Therefore, the relevant inquiry is whether the word "lettuce" is generic for offering restaurant services. The record is devoid of any evidence or argument that the relevant purchasing group understands the term "lettuce" to refer to the genus of restaurant services.

---

[4] A mark becomes incontestable when it "has been in continuous use for five consecutive years subsequent to the date of [its] registration and is still in use in commerce" and meets other statutory requirements. 15 U.S.C. § 1065.

Moreover, LEYE is not using the term "lettuce" to refer to a green leafy vegetable. Rather, it uses the noun "lettuce" as a pun for the verb "let us." Accordingly, the word "lettuce," as used by LEYE, is not generic because it refers to the types of services LEYE provides. Thus, LEYE has a better than negligible chance of showing that its family of marks is protectable.

**B.     Whether Defendants Used "Lettuce mix" in Commerce**

In order for there to be infringement, defendants must also have used the mark in commerce. The commercial use of a mark is not limited to cases where it was attached to a product that was actually sold. Commercial use also extends to advertising and promotional activities. *See Johnny Blastoff, Inc.,* v. *Los Angeles Rams Football Co.*, 188 F.3d 427, 434 (7th Cir. 1999) (citing *T.A.B. Systems* v. *Pactel Teletrac*, 77 F.3d 1372, 1375 (Fed. Cir. 1996)). In this case, although defendants' restaurant did not open for business under the "Lettuce mix" name, they nonetheless intend to use the mark in commerce by operating under that name. Thus, the use element is established.

**C.     Whether There is a Likelihood of Confusion**

LEYE must prove that defendants' use of "Lettuce mix" was likely to cause consumer confusion. In the Seventh Circuit, seven factors are used to evaluate whether a likelihood of confusion exists in trademark and service mark cases: (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products or services; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of plaintiff's mark; (6) whether any actual confusion exists; and (7) whether the defendant intends to palm off its products as those of the plaintiff. *Ty*, 237 F.3d at 897-98. Although no one factor

7

is dispositive, the similarity of the marks, the defendant's intent, and evidence of actual confusion are weighted heavily. *Id.*

### 1. Similarity Between Marks in Appearance and Suggestion

LEYE argues that "Lettuce mix" is similar to its service mark for two reasons: (1) it wholly incorporates the federally registered LETTUCE mark; and (2) it is substantially similar to LEYE's family of marks. Defendants argue that the court should focus on the differences in the graphic designs of the two logos.

In determining the similarity of the marks, the court makes the comparison between the two marks in light of what happens in the marketplace, not necessarily by looking at the two marks side by side. *Ty*, 237 F.3d at 898. Moreover, "if one word or feature of a composite trademark is the salient portion of the mark, it may be given greater weight than the surrounding elements." *Id.* (*quoting Henri's Food Prods. Co., Inc.* v. *Kraft, Inc.*, 717 F.2d 352, 356 (7th Cir. 1983). The proper inquiry for a family of marks is to inquire whether the defendant's mark appropriated the salient feature of the family of marks. *See AM Gen. Corp.* v. *DaimlerChrysler Corp.*, 311 F.3d 796, 814 (7th Cir. 2002). In the context of the restaurant services industry, consumers are exposed to the mark through word of mouth. Because of this, it is appropriate to look to the aural similarities as well. *Meridan* is instructive on this point. There, the Seventh Circuit found Meridan Insurance Group confusingly similar to Meridan Mutual Insurance Company because "[a] person hearing the two parties' names would likely focus on the word 'Meridian' and gloss over the other words, and the parties are therefore using essentially the same mark." *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.*, 128 F.3d 1111, 1115 - 1116 (7th Cir. 1997); *see also Barbecue Marx, Inc.* v. *551 Ogden, Inc.*, 235 F.3d 1041, 1044 (7th

8

Cir. 2000) (finding a substantial similarity between "Bone Daddy" and "Smoke Daddy" because the words "bone" and "smoke" sound alike and evoke similar imagery).

A person hearing any of LEYE's family of marks and the name "Lettuce mix" is likely to focus on the word "lettuce" and how it is used. Defendants' use of the word "lettuce" in "Lettuce mix" is substantially similar to LEYE's use of "lettuce" in its family of marks because both are being used in connection with providing restaurant services and because "Lettuce mix" appropriates the salient feature of LEYE's family of marks: the use of "lettuce" as a pun for "let us." Defendants do not dispute that they intend "Lettuce mix" to be a pun for "let us mix," just as "Lettuce Entertain You" is a pun for "let us entertain you." The use of "lettuce" as a pun for "let us" is further emphasized by the "Lettuce mix" sign, which displays "Lettuce" in large green lettering, substituting orange for the "u" followed by a smaller placard stating "mix." By separating the first three letters, the orange "u" emphasizes the pun. Defendants argue that the logos are not substantially similar because they do not look alike. Although the sign for "Lettuce mix" and LEYE's waiter logo are visually dissimilar,[5] an average consumer does not encounter the two marks side by side when choosing which restaurant to patronize. Furthermore, LEYE does not always use the waiter logo, *e.g.*, LEYE's frequent diner club card does not display the waiter logo. Therefore, because "Lettuce mix" sounds similar to the LEYE family of marks and copies their salient feature, the court finds that they are substantially similar. Accordingly, this factor weighs in favor of LEYE.

## 2. Similarity of Services

_____

[5] *See supra* at 3.

The similarity of products or services inquiry seeks to determine if the products or services "are the kind the public attributes to a single source." *Ty*, 237 F.3d at 899. When considering whether "products [or services] are closely related for the purpose of likelihood of confusion, a closely related product [or service] is one which would reasonably be thought by the buying public to come from the same source, or thought to be affiliated with, connected with, or sponsored by the trademark owner." *Id.* at 899-900 (citations omitted) (quotation marks omitted). In other words, a trademark protects the owner against not only its use upon the products and services to which it has been applied, but also to "such other [products and services] as might naturally or reasonably be supposed to come from [it]." *Forum Corp. of N. Am.* v. *Forum, Ltd.*, 903 F.2d 434, 442 (7th Cir. 1990) (quotation marks omitted).

LEYE argues that consumers are likely to associate defendants' restaurant with LEYE because both use "lettuce" in connection with restaurant services. Defendants argue that the parties' services are different, however, because LEYE does not use the term "lettuce" in connection with any of its physical restaurants but, instead, for behind-the-scenes restaurant management, catering, and consulting services. While none of LEYE's current restaurants use the LETTUCE mark in its name, it would be reasonable for restaurant goers to think that "Lettuce mix" was one of LEYE's restaurants, or to assume that LEYE's frequent diner's club and gift cards could be used at a restaurant named "Lettuce mix." Defendants' argument also fails to account for the fact that LEYE does offer food to consumers directly under the Lettuce mark in connection with its catering services. Defendants further argue that the services and products it intends to offer under the name "Lettuce mix" are different from LEYE because none of LEYE's restaurants is small, independent and focuses solely on salads. LEYE, however,

operates restaurants that offer salads at many different price points. For example, LEYE

operates R.J. Grunts, which is a casual restaurant famous for its salad bar. Furthermore, it is

clear from the "Lettuce mix" menu that defendants intend to sell soups and sandwiches in

addition to salads at its new restaurant. *See* Ex. B to Pl.'s Reply Mem. (Dkt. No. 37). Because

defendants' new restaurant offers products and services that are similar, although not identical,

to LEYE's restaurants and other services, this factor weighs slightly in favor of LEYE.

### 3.     Area and Manner of Concurrent Use

"When considering the area and manner of concurrent use factor, [the court must] assess

whether there is a relationship in use, promotion, distribution, or sales between the goods or

services of the parties." *Ty*, 237 F.3d at 900 (citations omitted) (quotation marks omitted). When

the goods and services are in close competition, marks need not be as similar in order to find

infringement. *Nike, Inc.* v. *Just Did It Enter.*, 6 F.3d 1225, 1230 (7th Cir. 1993) (citations

omitted). The Seventh Circuit has identified several factors to consider when determining if a

product or service is within the same area and manner of concurrent use: "(1) the relative

geographic distribution areas; (2) whether there exists evidence of direct competition between

the products [or services]; . . .and [3] whether the product is sold through the same marketing

channels."[6] *Ty*, 237 F.3d at 900 (citations omitted).

First, there is evidence that LEYE and defendants use the Lettuce mark in the same area

and manner. Defendants rely exclusively on the Seventh Circuit's decision in *Barbeque Marx* to

argue that restaurants named Smoke Daddy and Bone Daddy located 1.4 miles apart in a city as

---

[6] *Ty* also lists other factors that do not translate into the service mark inquiry: "whether the products are
sold to consumers in the same type of store; [and] whether the products are sold in the similar section of a
particular store." *Ty*, 237 F.3d at 900 (citations omitted).

densely populated as Chicago are too far removed from each other to be considered in the same geographic distribution area. *See Barbeque Marx*, 235 F.3d at 1045. Unlike the plaintiffs in *Barbecue Marx* who owned only one other restaurant 1.4 miles from the defendant's allegedly infringing restaurant, LEYE owns over 70 restaurants in Chicago, including the Lincoln Park neighborhood where Tehrani's other restaurants are located. Indeed, LEYE owns and operates an R.J. Grunts less than one mile from defendants' new restaurant. The regional recognition that LEYE obtained through its family of marks combined with the distribution of 70 restaurants throughout the region indicates that defendants' restaurant is, in fact, operating in the same geographic area.

Second, there is direct competition between the parties' services. Defendants characterize their new restaurant as a casual neighborhood salad bar and argues that they therefore do not compete with the more corporate, upscale and full-service restaurant experience provided by LEYE. This argument is unavailing, however, because LEYE has a wide breadth of restaurants offering different types of dining experiences at different price points. Moreover, the court is unpersuaded by defendants' characterization of their new restaurant as merely a salad bar because, as discussed above, it does not exclusively sell salads. Accordingly, there is some competition between LEYE's restaurants and defendants' new restaurant. Third, LEYE and defendants' use some of the same marketing channels because both rely on word of mouth.

Because the parties' services are offered in the same geographic area, are in at least some degree of competition, and advertise in similar marketing channels, this factor weighs in favor of LEYE.

### 4.     Degree of Care

Generally, "[t]he more widely accessible and inexpensive the product and services, the more likely that consumers will exercise a lesser degree of care and discrimination in their purchases." *CAE, Inc.* v. *Clean Air Eng'g., Inc.*, 267 F.3d 660, 683 (7th Cir. 2001). Defendants argue that customers will exercise a high degree of care and discrimination in choosing a to eat at LEYE's restaurants because many of them offer fine dining experiences and are very expensive. Defendants' therefore conclude that restaurant goers will not unwittingly patronize their new restaurant. While defendants' characterization applies to some of LEYE's restaurants, such as L20, TRU and Wildfire, other LEYE restaurants as already indicated are inexpensive. Therefore, LEYE and defendants are competing for restaurant goers seeking a casual and inexpensive lunch, and such consumers are assumed to exercise a lesser degree of care. Accordingly, this factor weighs in favor of LEYE.

### 5.     Strength of the Marks

The strength of a trademark "refers to the distinctiveness of the mark, or more precisely, its tendency to identify the goods sold under the mark as emanating from a particular . . . source." *Eli Lilly & Co.* v. *Natural Answers, Inc.*, 233 F.3d 456, 464 (2000) (citations omitted) (quotation marks omitted). A family of marks is stronger than a single mark because, by definition, "a group of marks hav[e] a recognizable common characteristic, wherein the marks are composed and used in such a way that the public associates not only the individual marks, but the common characteristic of the family, with the trademark owner." *AM Gen. Corp.*, 311 F.3d at 814 (quotation marks omitted); *see also Quality Inns Intern., Inc.* v. *McDonald's Corp.*, 695 F. Supp. 198, 212 (D. Md. 1988) ("A family of marks may have a synergistic recognition

that is greater than the sum of each mark."). A court should consider the strength of any family of marks from the time the allegedly infringing mark entered the marketplace. *AM Gen. Corp.*, 311 F.3d at 819.

Defendants do not dispute that LEYE owns a family of marks.[7] Rather, they contend only that the LETTUCE family of marks cannot be strong because they are generic. As discussed above, however, LEYE's use of its LETTUCE family of marks for restaurant services is not generic. Here, the common characteristic of the family of marks, LETTUCE, has been registered on the principal register as a mark for restaurant services since 1992. As a result, LEYE enjoys a rebuttable presumption that restaurant goers in Chicago associate the word "lettuce" when used in connection with restaurant services with LEYE. Moreover, LEYE has continuously cross-promoted the LEYE family of marks "by prominently displaying the names of all LEYE restaurants and using the LETTUCE mark and the LETTUCE family of marks at its various establishments and through its websites." Steibler Decl. ¶ 9. The common use of the LETTUCE mark as a play on words for "let us" combined with the cross promotion of LEYE's marks supports a conclusion that LEYE owns a strong family of marks. Accordingly, this factor weighs in favor of LEYE.

### 6. Actual Confusion

"Although evidence of actual confusion, if available, is entitled to substantial weight in the likelihood of confusion analysis, this evidence is not required to prove that a likelihood of confusion exists." *CAE, Inc.* v. *Clean Air Engineering, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001)

---

[7] "Whether a family of marks exists is an issue of fact based on the common formative component's distinctiveness, the family's use, advertising, promotion, and inclusion in party's other marks." *AM Gen. Corp.*, 311 F.3d at 815. Joint advertising and promotion in a manner designed to create an association are pertinent. *Id.*

(citations omitted). Moreover, "the most that the absence of evidence of actual confusion can be said to indicate is that the record does not contain any evidence of actual confusion known to the parties." *Id.* at 686 (citing 3 J. Thomas McCarthy, *Trademarks and Unfair Competition* §23:18, 23-62 (4th ed. 2001)). Because LEYE is not required to show evidence of actual confusion, its failure to introduce evidence of actual confusion, particularly at this preliminary stage of the litigation does not determine its likelihood of confusion showing.

### 7. Intent

The last factor to be evaluation in determining the likelihood of confusion is the defendant's intent, *i.e.*, whether the defendant intended to pass off its service as that of the plaintiff. *Packman* v. *Chi. Tribune Co.*, 267 F.3d 628, 644 (7th Cir. 2001). The inquiry is not whether the defendant intended to use a mark that was already in use somewhere else. *Meridian Mut. Ins. Co.*, 128 F.3d at 1120 (citing *Libman Co.* v. *Vining Indus., Inc.,* 69 F.3d 1360, 1363 (7th Cir. 1995)). Accordingly, intent to pass off cannot be inferred merely from defendant's mere knowledge of the senior user's mark. *Personeta, Inc.* v. *Persona Software, Inc.*, 418 F. Supp. 2d 1013, 1019 (N.D. Ill. 2005). The "use of a descriptive phrase is consistent with the inference that [a defendant] intended to act in good faith." *Packman*, 267 F.3d at 644. In addition, the court should evaluate whether the themes, styles and location of the restaurants are similar. *See Barbecue Marx,* 235 F.3d at 1046. There is no evidence that defendants intended to pass off their new restaurant as an LEYE restaurant. The name "Lettuce mix" is descriptive of the service defendants provide at the restaurant. Furthermore, it is located less than a block away from Tehrani's two other restaurants in Lincoln Park, Basil Leaf Café and Sage Food and Wine, which have been in operation for over a decade. *Id.* The restaurant's proximity to Tehrani's

15

other restaurants, coupled with its independent, neighborhood style, leads to the conclusion that defendants did not seek to pass it off as one of LEYE's restaurants, which tend to be larger and more commercial.  *See* Op. and Order of June 8, 2009 at 3-4 (Dkt. No. 29).  While this factor weighs in favor of defendants, all but one of the other likelihood of confusion factors – actual confusion, of which there was no evidence – weigh in favor of LEYE.  Before the court can conclude that LEYE has established a likelihood of success on the merits, however, it must address the defendants' fair use argument.

### D.      Defendants' Fair Use Defense

Defendants argue that their use of "Lettuce mix" is fair.  To prevail on their fair use defense, defendants must show that (1) they are not using "Lettuce mix" as a service mark; (2) they are using the mark in good faith merely to describe their services, and (3) the mark is in fact descriptive of their services.  *M.B.H. Enters., Inc.* v. *WOKY, Inc.*, 633 F.2d 50, 53 (7th Cir. 1980); *Packman*, 267 F.3d at 639. "A service mark is a symbol or combination of symbols used by a source of services to identify itself to the public as the source of its services and to create in the public consciousness an awareness of the uniqueness of the source and of its services." *WOKY*, 633 F.2d at 53-54.  Whether the mark at issue is being used as a service mark "depend[s] on whether [the defendant] intended to use [the words] as service marks and whether they in fact [perform] the function of a service mark." *Id.*  In this case, defendants clearly intend to use "Lettuce mix" as a service mark to designate to the public that it is a restaurant serving salads. Defendants rely on the First Circuit decision in *Leathersmith of London, Ltd.* v. *Alleyn*, to argue that it is using "lettuce" solely as a generic description of the products it restaurant offers. 695 F.2d 27, 28 (1st Cir. 1982).  There, the court found that the defendant's use of the

incontestable "Leathersmith" trademark was used as a generic description of the defendant's craft because it was a combination of the ordinary words "leather" and "smith" which indicate that the defendant was a person who constructs or produces leather goods. *Id.* at 30-31. Unlike the defendant in *Leathersmith*, however, defendants in this case are not using "lettuce" solely in the ordinary sense. Rather, defendants are using it as a pun to indicate that it is a restaurant that mixes salads- to-order for its patrons, not that it sells their main ingredient, lettuce. Because defendants cannot meet the first element of its fair use defense, their fair use defense must fail.

Therefore, as LEYE has shown that there is a substantial likelihood of confusion, that the LETTUCE family of marks is protectable, and that defendants' have used that mark in commerce, it has established a likelihood of success on the merits.

### III. Whether LEYE has no adequate remedy and will suffer irreparable harm if the injunction is not granted

While defendants attempt to argue that LEYE has an adequate remedy at law,[8] it is well established that the "damages occasioned by trademark infringement are by their very nature irreparable and not susceptible of adequate measurement for remedy at law." *Int'l Kennel Club of Chi., Inc.* v. *Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988) (quoting *Processed Plastic* v. *Warner Commc'ns, Inc.,* 675 F.2d 852, 858 (7th Cir. 1982)); *see also Promatek Industries, Ltd.* v. *Equitrac Corp*., 300 F.3d 808, 813 (7th Cir. 2002) ("[I]t is well settled that

---

[8] Defendants rely on *East St. Louis Laborer's Local 100* v. *Bellon Wrecking & Salvage Co.*, for the proposition that "speculative injuries do not justify the extraordinary remedy" of a temporary restraining order or preliminary injunction. 414 F.3d 700,704 (7th Cir. 2005). That case is distinguishable, however, because it involved a dispute over a collective bargaining agreement, not a claim of trademark infringement. There, the plaintiffs contended that they would face irreparable harm if the defendant "breach[ed] the [agreement] in a way that [might] trigger some lost wages that [could not] be calculated." *Id.* at 705. The court ruled that the harm plaintiff pointed to "elude[d] calculation because it [was] speculative, not because, if it occurred, it could not be quantified." *Id*. As discussed in the text, because LEYE has a likelihood of success on its claim of trademark infringement, its harm is not speculative.

injuries arising from Lanham Act violations are presumed to be irreparable, even if the plaintiff fails to demonstrate a business loss."). This presumption of irreparable harm to the plaintiff in trademark infringement actions arises because "it is virtually impossible to ascertain the precise economic consequences of intangible harms, such as damage to reputation and loss of goodwill, caused by such violations." *Abbott Labs* v. *Mead Johnson & Co.*, 971 F.2d 6, 16 (7th Cir. 1992). Accordingly, LEYE has no adequate remedy at law and will suffer irreparable harm if its request for an injunction is not granted.

## IV. Balancing the Harms

Because LEYE has a better then negligible chance of success on the merits and it will suffer irreparable harm if the injunction is not granted, the court must balance the harm defendants will suffer if they are enjoined from using the name "Lettuce mix" against the harm LEYE would suffer if defendants are allowed to operate under that name. *See Ty,* 237 F.3d at 895. The Seventh Circuit uses a sliding scale approach where "the more likely [it is that] the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor the plaintiff's position." *Ty,* 237 F.3d at 895 (citing *Abbott Labs.,* 971 F.2d at 12). Defendants argue that Tehrani's reputation and standing in the community will be tarnished if the court grants the injunction requested by LEYE because the public will assume that he acted improperly and "attempt[ed] to cheat his way into success." Def.'s Resp. in Opp'n at 19. This harm, however, is speculative at best; it is equally as likely that the public will sympathize with Tehrani, a small, independent business owner, over LEYE, a large, corporate entity. Indeed, Tehrani has portrayed LEYE's attempts to restrict the use of the word "lettuce" as overreaching and unjustified. *See, e.g.,* Op. and Order of June 8, 2002 at 4-5. Moreover, the court doubts

18

there will be significant loss of goodwill to defendants' new restaurant or Tehrani's other restaurants given that they covered the "Lettuce mix" sign with a banner at the outset of this suit. In any case, when assessing the harm to the alleged infringer, "the court excludes the burden it voluntarily assumed by proceeding in the face of known risk." *Ty*, 237 F.3d at 903 (infringer's "claim of irreparable harm rings hollow" because it had full knowledge of the potential consequences of the use of plaintiff's mark). Here, the record is clear that defendants had full knowledge of LEYE's mark and its intent to sue to enjoin its use. Accordingly, any loss of goodwill defendants incur must be attributed to their own actions.

## V.    Public Interest

Enforcement of trademark law serves the public interest by reducing consumer confusion. *Eli Lilly & Co.,* 233 F.3d at 469. On the other hand, "trademark protection should not interfere with the traditional policies of a competitive market." *Platinum Home Mortgage Corp.* v. *Platinum Fin. Group, Inc.*, 149 F.3d 722, 726 (7th Cir. 1998). "An essential component of competition is availability of words for advertising, promoting, and informing the public." *Best Vacuum, Inc.* v. *Ian Design, Inc.,* No. 04 C 2249, 2005 WL 1185817 at *17 (N.D. Ill. Jan. 18, 2005). Defendants argue that the potential for consumer confusion in this case is small and is outweighed by the public harm that would be caused by allowing the word "lettuce" to be monopolized by LEYE. As discussed above, however, there is a substantial likelihood of confusion in this case. The confusion that is likely to occur by allowing defendants to operate under the name "Lettuce mix," which appropriates the salient pun aspect of LEYE's family of marks, is not outweighed by the public interest in competition. As discussed above, Defendants are not seeking to use "lettuce" in a purely descriptive sense and there are infinite other names

under which defendants may continue to operate their restaurant. Furthermore, nothing in this opinion is meant to imply that LEYE has a monopoly on the word "lettuce." Accordingly, granting LEYE an injunction would not harm the public interest.

## CONCLUSION

For the forgoing reasons, LEYE's motion for a temporary restraining order and preliminary injunction [#14] is granted. Status is set for April 8, 2010 at 9:00am. The parties are directed to make sincere efforts to resolve the litigation and to report on those efforts at the status.


Dated:    February 26, 2010          Enter:  _____

                                             JOAN HUMPHREY LEFKOW
                                             United States District Judge